QF HOLDINGS, INC. and QUALIFACTS )
SYSTEMS, LLC, )
         )
    Plaintiffs, )
         )
v. )     **Case No. 3:25-cv-00914**
         )     **Judge Aleta A. Trauger**
SUBRATA CHOUDHURY, )
         )
    Defendant. )

## MEMORANDUM

Defendant Subrata Choudhury has filed a Motion to Dismiss (Doc. No. 23) under the doctrine of *forum non conveniens*, which, for the reasons set forth herein, will be denied.

## I.    FACTS

Plaintiff Qualifacts Systems, LLC ("Qualifacts") is a subsidiary of plaintiff QF Holdings, Inc. ("QF"). (Compl., Doc. No. 1 ¶ 5.) They share a Nashville address. (*Id.* ¶¶ 1–2.)[1] Qualifacts develops and sells electronic health records systems and software. (*Id.* ¶ 17.) Defendant Choudhury, a citizen and resident of India, is a software engineer. (*Id.* ¶¶ 6, 15, 37–38.) Until he was terminated just before this suit was filed, Choudhury was Managing Director and Senior Director of Engineering at IHCS Technologies Private Limited ("IHCS"), which was formerly owned by InSync Healthcare Solutions, LLC ("InSync"). (*Id.* ¶¶ 7–9, 12.) Choudhury began working for IHCS in 2012, which at the time went by a different name. (*Id.* ¶ 10–11.) In 2021, QF

---

[1] QF is a Delaware corporation with its principal place of business in Nashville. (Doc. No. 6 at 1.) Qualifacts is a "Delaware limited liability company" with its principal place of business in Nashville. (Doc. No. 7 at 3.)

acquired IHCS; as a result, IHCS became a subsidiary of QF and IHCS' employees, including the defendant, became "part of the Qualifacts family of companies and . . . subject to the policies and requirements of Qualifacts."[2] (*Id.* ¶¶ 13–14, 36.) The plaintiffs allege that, during his employment, and in violation of several contracts, Choudhury competed against Qualifacts, including by soliciting co-workers to set up competing companies by using proprietary information. (Compl. ¶¶ 71–153.)

Relevant to the now-pending Motion to Dismiss are certain contracts the plaintiffs have filed as Exhibits to the Complaint, which relate to the defendant's employment and which the court will briefly describe. Of note is the fact that two contracts have mandatory arbitration provisions and one has a mandatory forum selection clause.

IHCS Agreement

The Confidentiality and Repayment/Reimbursement of Cost of Training Agreement ("IHCS Agreement") is between Choudhury and IHCS[3] and was executed in 2018, years before QF acquired IHCS. (Doc. No. 1-1 at 1, 5.) Therein, Choudhury agreed to "comply with all Company rules, procedures, and standards." (*Id.* at 2.) Specifically, he agreed to maintain confidentiality, not to use proprietary information "for any other company," and to remain with IHCS for at least eighteen months or else repay the cost of recruitment and training. (*Id.* at 2–4.) In addition, he agreed to a non-compete provision. (*Id.* at 4.) The IHCS Agreement includes a

---

[2] In another filing, the plaintiffs refer to IHCS as "Qualifacts' Indian subsidiary." (Doc. No. 11 at 2.)

[3] The court observes that the IHCS Agreement identifies Choudhury's counterparty and employer as "IHCS Technologies *India* Pvt. Ltd," while both parties omit "India" from its name. (*Contrast* Doc. No. 1-1 at 1, *with* Compl. ¶ 7, *and* Doc. No. 23-1 at 2.) The parties do not make an issue of this, so neither will the court.

mandatory arbitration provision, specifying that the arbitration will be conducted in India. (*Id.* at 5.) It does not contain a choice of law provision.

<u>Retention Agreement</u>

In December 2021,[4] Choudhury signed the Retention Agreement with QF. (Doc. No. 1-3 at 1, 8.) The Retention Agreement "was designed to retain Defendant's employment following the sale of InSync to QF." (Compl. ¶ 57.) In exchange for remaining with IHCS, Choudhury was to receive, and did receive, a $750,000 "Retention Bonus." (Doc. No. 1-3 at 3; Compl. ¶ 58.) One of the terms of the Retention Agreement is that Choudhury sign and abide by a separate Restrictive Covenant Agreement. (Doc. No. 1-3 at 3.) And the Retention Agreement specifies that, if Choudhury breaches either the Retention Agreement or the Restrictive Covenant Agreement, he would have to return the Retention Bonus. (*Id.* at 3–4.)

The Retention Agreement includes a Florida choice of law provision, "without giving effect to the conflict of laws principles" of Florida, and an Eleventh Circuit choice of law provision "with respect to any disputes concerning federal law." (*Id.* at 6–7.) It provides that "any dispute arising out of or relating to this Agreement . . . shall be finally settled by binding arbitration" in Florida. (*Id.* at 6.)[5]

<u>The Restrictive Covenant Agreement</u>

---

[4] The Retention Agreement leaves a blank space for the day in its first sentence and the signatures are undated. (Doc. No. 1-3 at 1, 8 (indicating that the Retention Agreement is "executed as of the day and year set forth above").)

[5] In addition, the Retention Agreement provides that it supersedes all other agreements between the parties on the same subject matter. (Doc. No. 1-3 at 5.) However, no party argues that the Retention Agreement supersedes the IHCS agreement, and, as the court will discuss, one of the plaintiffs' causes of action is breach of the IHCS Agreement. (Compl. at 20 (Count I); *accord id.* ¶ 155 ("The IHCS Agreement is a valid and enforceable agreement.").)

3

On December 12, 2021, Choudhury signed the Proprietary Information, Non-Solicitation, Noncompetition, and Inventions Agreement ("Restrictive Covenant Agreement").[6] (Doc. No. 1-4 at 1, 3.) The Restrictive Covenant Agreement provides that it "will be governed by and construed according to the laws of the State of Tennessee" (*id.* at 3), and it provides that the "exclusive venue for any action to enforce this Agreement will be the state courts located in Davidson County, Tennessee or the federal court located in the Middle District of Tennessee." (*Id.*) In addition, the Agreement states that the parties agree to the personal jurisdiction of those courts and "waive any defense of inconvenient forum to the maintenance of any action or proceeding to be brought." (*Id.*)

## II. PROCEDURAL HISTORY

The plaintiffs invoke this court's jurisdiction under 28 U.S.C. § 1332(a), on the basis of complete diversity of citizenship among the parties and the requisite amount in controversy. (Compl. ¶ 15.) The Complaint alleges breach of each of the three contracts the court has described. (Count I (Breach of IHCS Agreement), *id.* ¶¶ 154–60; Count II (Breach of Retention Agreement), *id.* ¶¶ 161–65; Count III (Breach of Restrictive Covenant Agreement), *id.* ¶¶ 166–75.) In addition, the Complaint alleges breach of fiduciary duty of loyalty (Count IV, *id.* ¶¶ 176–179), conspiracy to breach fiduciary duty of loyalty (Count V, *id.* ¶¶ 180–86), and fraudulent concealment (Count VI, *id.* ¶¶ 187–95). The Complaint makes clear that Counts IV–VI are not tied to one particular contract. For example, the plaintiffs allege that Choudhury "breached his duty of loyalty given his various breaches of contract." (*Id.* ¶ 178.) The plaintiffs seek the return of the Retention Bonus, damages, costs, and fees, and a court order requiring the defendant and "all parties in active concert or in participation with him" to return all proprietary information to the plaintiffs. (*Id.* at 25–26.)

---

[6] While the contract leaves a space for the signature of Qualifacts Systems, Inc., Qualifacts' predecessor (Compl. ¶ 4), it is blank. (Doc. No. 1-4 at 3.)

The Complaint also seeks a Temporary Restraining Order ("TRO"), Preliminary Injunction ("PI"), and a Permanent Injunction. (*Id.* at 25.)

Soon after filing the Complaint, the plaintiffs filed a Motion for TRO and PI. (Doc. No. 10.) After a TRO hearing, the court entered a TRO enjoining the defendant from violating the Restrictive Covenant Agreement or destroying records and set a PI hearing. (Doc. No 15 at 1–2.) The court then granted the plaintiffs' Motion to Extend TRO (Doc. No. 18) until December 10, 2025 and continued the PI hearing. (Doc. No. 19 at 1.) The plaintiffs did not move to further extend the TRO. (*Accord* Doc. No. 30 (directing the Clerk to term Doc. No. 10).)

The defendant filed a Motion to Dismiss on *Forum Non Conveniens* Grounds (Doc. No. 23), in support of which he filed a Memorandum (Doc. No. 23-1) and his own Declaration (Choudhury Decl., Doc. No. 23-2), and in response to which the plaintiffs filed a Response (Doc. No. 24) and the Declaration of their Chief Financial Officer (Landa Decl., Doc. No. 24-1). The defendant filed a Reply (Doc. No. 26), and the plaintiffs, with leave of court (Doc. No. 28), filed a Sur-Reply (Doc. No. 29).

## III.    LEGAL STANDARD

"Under the common law doctrine of *forum non conveniens*, 'a federal trial court may decline to exercise its jurisdiction, even though the court has jurisdiction and venue, when it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in another forum.'" *Associação Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 619 (6th Cir. 2018) (quoting *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 828 (5th Cir. 1993)). In *forum non conveniens* analyses, courts consider:

> [1] the degree of deference owed to the plaintiff's choice of forum, [2] whether the defendant has shown that an adequate alternative forum is available, and [3] whether the defendant has shown that the private and public interests dictate that the plaintiff's chosen forum would be unnecessarily burdensome.

5

*Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 310–11 (6th Cir. 2024) (first citing *Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1090 (6th Cir. 2019); and then citing *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016)). A defendant moving to dismiss on the basis of *forum non conveniens* "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

## IV.    DISCUSSION

### A.    Alternative Forum

The court begins by considering the existence of an alternative forum because "identifying an alternate forum is a prerequisite for dismissal, not a factor to be balanced." *Associação Brasileira*, 891 F.3d at 619–20. An alternative forum must be both available and adequate. *Jones*, 920 F.3d at 1090 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). The defendant argues that India is an available and adequate alternative forum. (Doc. No. 23-1 at 5–7.) The plaintiffs make no argument on this point in response.

An alternative forum is *available* "if the defendant is amenable to process there." *Jones*, 920 F.3d at 1091 (citing *Piper Aircraft*, 454 U.S. at 254 n.22). The defendant states that he is "subject to the jurisdiction of Indian courts and would be amenable to process in India." (Choudhury Decl. ¶ 22.) Thus, India is an available forum. *Cf. Jones*, 920 F.3d at 1091 (finding Equatorial Guinea to be an available forum where the defendant filed an affidavit stating that he was amenable to process there and the plaintiff conceded the point).

A forum is *adequate* if it can remedy the alleged harm. *Id.* "Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute." *Piper Aircraft*, 454 U.S. at 254 n.22. As the Sixth Circuit has noted, "[w]e presume that a foreign court will be an adequate forum, only rendering it inadequate if a foreign legal system's 'procedures and idiosyncrasies' are 'so clearly inadequate that forcing a plaintiff to

6

bring suit there would be unjust.'" *Instituto Mexicano del Seguro Soc. v. Stryker Corp.*, 28 F.4th 732, 737 (6th Cir. 2022) (quoting *Hefferan*, 828 F.3d at 495). And "[c]ountries that have jurisdiction over the defendant typically qualify" as available and adequate forums. *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 659 (6th Cir. 2021) (citing *Piper Aircraft*, 454 U.S. at 254 n.22). Because the plaintiffs make no argument regarding availability, and in light of the foregoing discussion, the court finds that India is an adequate forum. *Cf. Martinez-Porte v. Multi-Color Corp.*, No. 23-3971, 2024 WL 3508690, at *2 (6th Cir. July 23, 2024) ("As Martinez-Porte concedes that Mexico is an adequate forum, our analysis centers on whether it is also an available one.").

**B.     Degree of Deference to the Plaintiffs' Chosen Forum**

Usually, "it makes sense to defer to a plaintiff's choice of forum based on an assumption that the plaintiff knows its self-interest better than anyone else and thus will choose a convenient forum." *Instituto Mexicano*, 28 F.4th at 737 (quoting *Prevent USA*, 17 F.4th at 660). But the court must "determine the amount of deference owed to the plaintiff's forum choice based on a 'sliding convenience scale,'" where the defendant's showing necessary to overcome the deference to the plaintiff rises or falls in proportion to the degree of deference owed to the plaintiff. *Associação Brasileira*, 891 F.3d at 619 (quoting *Hefferan*, 828 F.3d at 494.) For example, "[w]hen a domestic plaintiff initiates a suit in his home forum, that choice is normally entitled [to] great deference because it is presumptively convenient for the plaintiff." *Hefferan*, 828 F.3d at 493 (citing *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523–24 (6th Cir. 2010)). But this presumption diminishes "as the plaintiff's connections to the United States weaken or as evidence of forum shopping mounts." *Associação Brasileira*, 891 F.3d at 619 (citing *Hefferan*, 828 F.3d at 493–94).

The defendant makes limited argument regarding deference and appears to apply the public and private interest factors to the court's deference analysis. (*See* Doc. No. 23-1 at 5 ("Here, Plaintiffs' choice of forum is not owed great deference by the Court because the private and public interest weigh[] strongly in favor of dismissal.").) The defendant also contends that it would be "extremely inconvenient and burdensome" for him to litigate in Tennessee. (*Id.* (citation omitted).) Here, the plaintiffs have their principal places of business in the forum and 74 of Qualifacts' 386 American employees are in Tennessee. (Compl. ¶¶ 4–5.) Because the plaintiffs have filed suit in their home forum, and their ties to the forum are substantial, the court affords great deference to their choice.

### C.      Public and Private Interest Factors

The court, having determined that the plaintiff is owed a great degree of deference in its choice of forum and that an alternative forum exists, will balance various public and private interests. "In general, the standard of deference for a U.S. plaintiff's choice of a home forum permits dismissal only when the defendant 'establishes such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent.'" *Duha v. Agrium, Inc.*, 448 F.3d 867, 873–74 (6th Cir. 2006) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)) (alteration omitted).

#### 1.      Public Interest Factors

The public factors "include [1] the respective governments' interests in the dispute, [2] the location of the injury, [3] the condition of the involved court's docket, [4] the location of the governing law, [4] hesitation to apply foreign law, and [5] avoidance of conflict-of-law problems." *Instituto Mexicano*, 28 F.4th at 738 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

Choudhury argues that the public factors weigh in favor of dismissing this case. (Doc. No. 23-1 at 10.) He argues that he signed the contracts in India and worked only in India, that this case

8

has "no relation to local interests," and that resolution of the case would involve a "complicated conflict-of-law analysis." (*Id.* (citing Choudhury Decl. ¶¶ 4–6, 8).) In addition, the defendant argues in his Reply brief for the first time that India would be a more convenient forum because "Indian law likely governs several claims."[7] (Doc. No. 26 at 3.) This is because, for the contract claims, all of the contracts were executed in India, and, for the tort claims, "any alleged injury" and any conduct causing the alleged injuries occurred in India. (*Id.* at 4.)

The plaintiffs argue that the public interest factors weigh in favor of denying the defendant's Motion to Dismiss. (Doc. No. 24 at 8–11.) Contrary to the defendant's assertion that the case has no relation to the forum, the plaintiffs argue that Qualifacts is based in the forum, has 74 employees in Tennessee, and one contract contains a Middle Tennessee forum selection clause and a Tennessee choice of law provision. (*Id.* at 8.) In addition, the plaintiffs argue that the defendant is wrong about what law applies. First, they contend that two of the contracts apply "United States law." (Doc. No. 29 at 2.) And they argue that they have been injured in this forum, and imply, but do not state, that Tennessee law would apply to the tort claims. (Doc. No. 29 at 1 (citing *Env't 360, Inc. v. Walker*, 713 F. Supp. 3d 442, 451 (M.D. Tenn. 2024) (Crenshaw, C.J.)).)

The court finds that the public interest factors do not weigh heavily in favor of either the defendant or plaintiffs. Both governments have an interest in this dispute, which concerns an Indian software developer who lives and works in India for an Indian subsidiary of an American company. The location of the injury is in this forum because that is where the plaintiffs are. *Accord Aerospace Prods. Int'l, Inc. v. FWF, Inc.*, No. 06-02771-P, 2012 WL 13018505, at *7 (W.D. Tenn. Mar. 31, 2012) ("The injury for API's breach of fiduciary duty claim occurred in Tennessee, where

---

[7] In his opening brief, the defendant states that "Indian law should apply" and that he would submit a thorough analysis in response to the Motion for a PI. (Doc. No. 23-1 at 12 n.1.) To date, he has not submitted a response brief.

API is located."); *Bus. Mobility Sys., Inc. v. Fibernetics Corp.*, No. 1:13-cv-1224, 2014 WL 12672687, at *9 (W.D. Mich. Apr. 14, 2014) ("[I]t is the location of the party aggrieved by the alleged breach [of contract] that is relevant.").

As for the governing law, the parties have not sufficiently briefed this issue. The defendant states that "Indian law will govern the interpretation of these contracts" (Doc. No. 26 at 4), but his few sentences on this point are unconvincing in light of choice of law provisions to the contrary. Meanwhile, the plaintiffs' argument that two of the three governing contracts specify Tennessee and Florida law, respectively, does not rebut the defendant's reasonable contention that Indian law governs at least the IHCS Agreement, which does not contain a choice of law provision but was signed in India by an Indian engineer and his Indian employer. In a diversity case, the court applies the choice of law rules of the forum state. *VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 401 (6th Cir. 2025) (citing *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021)). Under Tennessee law, a "contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Selby v. Schroeder*, 522 F. Supp. 3d 388, 396 (M.D. Tenn. 2021) (Crenshaw, C.J.) (citing *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014)).

As for the hesitation to apply foreign law, it appears that either forum would have to apply the law of a foreign jurisdiction. Last, the parties have not briefed how keeping the case here, or dismissing it and allowing the plaintiff to file in India, would resolve any conflict of law problems. The defendant has not carried his burden of showing that the public interest factors weigh in favor of dismissal.

### 2. The Existence of a Forum Selection Clause

The court will briefly address an issue that the parties have discussed but the resolution of which is not necessary to resolve the Motion to Dismiss. As the court has discussed, the Restrictive

10

Covenant Agreement contains a mandatory forum selection clause specifying this court, along with the courts of Davidson County, as the "exclusive" forum for disputes arising out of the Restrictive Covenant Agreement. And, as the court has discussed, two contracts contain purportedly mandatory arbitration provisions. In a case governed by a forum selection clause, once the court determines that a "forum-selection clause is applicable to the claims at issue, mandatory, valid, and enforceable" *Lakeside Surfaces, Inc. v. Cambria Co.*, *LLC*, 16 F.4th 209, 215 (6th Cir. 2021), the court applies a modified *forum non conveniens* analysis in which it "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Firexo*, 99 F.4th at 311 (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013)).[8]

The parties discuss at length how the existence of the forum selection clause in the Restrictive Covenant Agreement should affect this court's analysis. Separately, the plaintiffs have not abided by, and the defendant does not seek to enforce, the arbitration provisions in the other contracts, even though the parties acknowledge their existence. (Doc. No. 23-1 at 11–12; Doc. No. 24 at 11.) In any event, the parties disagree about whether, given the one forum selection clause, the court should consider the private interest factors in its analysis. Because the court finds that the plaintiffs prevail even when the court considers the private interest factors, as the court will discuss, the court does not need to determine what role the forum selection clause in the Restrictive Covenant Agreement should play to resolve the defendant's Motion.

---

[8] In the typical case, the defendant's argument for dismissal under the *forum non conveniens* doctrine is based upon a forum selection clause specifying a venue other than the one in which the plaintiff has filed suit. In such a case, the "plaintiff's choice of forum merits no weight." *Firexo*, 99 F.4th at 311 (quoting *Atl. Marine*, 571 U.S. at 63). By contrast, in this case the plaintiffs have filed suit in the forum specified by a forum selection clause.

### 3.     Private Interest Factors

The private factors "include [1] access to evidence, [2] mechanisms for ensuring participation of unwilling witnesses, [3] costs of obtaining testimony from willing witnesses, [4] opportunities to view the relevant premises, and [5] other practical concerns such as cost and expeditiousness." *Instituto Mexicano*, 28 F.4th at 738 (citing *Gulf Oil*, 330 U.S. at 508).

Choudhury argues that the private factors weigh in favor of dismissing this case. (Doc. No. 23-1 at 9–10.) First, he states that he has always lived in India. (*Id.* at 9 (citing Choudhury Decl. ¶ 8).) Second, he states that an "overwhelming majority of the individuals the Plaintiffs named in the Complaint . . . live and work in India" and that "[s]everal of these witnesses are likely unwilling or unable to travel to the United States to testify." (*Id.* (citing Choudhury Decl. ¶¶ 12–21, 24.) Fourth, he notes that intercontinental travel is expensive. (*Id.* (citing Choudhury Decl. ¶ 23).) He concludes that, "[b]ecause the relevant witnesses, evidence, and documents in this case are located in India, this case should be dismissed." (*Id.* at 9–10 (citations omitted); *see also* Reply, Doc. No. 26 at 1 (reiterating that the "overwhelming majority of witnesses and evidence are located in India" (providing no citation); *see also id.* at 3 (noting that "trial in this Court would be difficult and inconvenient because important evidence and witnesses Defendant would use at trial are in India" (citing, generally, Choudhury Decl.).) Relatedly, the defendant states that, were he to litigate in this court, he "would be without access to important evidence and key witnesses." (Doc. No. 26 at 3.)

The plaintiffs argue that the private factors weigh in favor of maintaining venue in this forum. First, the plaintiffs point out that, while the defendant states that the majority of people named in the Complaint are located in India, he does not state whom he would call as a witness. (Doc. No. 24 at 6; *see also* Choudhury Decl. ¶¶ 12–21.) Instead, the defendant states that, "[o]ther than Ruhul Ahmed and Daniel Booker, all witnesses I currently plan to call for support live and

12

work in India and are unlikely to travel to Tennessee for the trial." (Choudhury Decl.¶ 24.) *Cf.* *Hefferan*, 828 F.3d at 499 (noting that the availability of compulsory process factor "receives less weight 'when it has not been alleged or shown that any witness would be unwilling to testify'" (quoting *Duha*, 448 F.3d at 877)). Second, the plaintiffs correctly note that the defendant has stated, without explanation, that, were the case to be tried here, he would be without access to important evidence. (Doc. No. 29 at 2–3 ("What evidence, let alone 'important' evidence, exists in India that cannot be brought to the United States?").) Last, the plaintiffs note that the defendant ignores that "Qualifacts has evidence and witnesses located in Nashville." (*Id.* at 2.)

In essence, the defendant's argument is that it would be inconvenient and costly for him, and his witnesses, to come to the United States and that some witnesses would refuse. But, as the plaintiffs point out, were the case tried in India, they and their witnesses would need to go there. Even if it would be more inconvenient for the defendant to try the case here than for the plaintiffs to try the case in India, the private factors only slightly weigh in the defendant's favor.

Because the court grants much deference to the plaintiffs' choice of forum, and because the defendant has not demonstrated oppressiveness out of all proportion to the plaintiffs' convenience, the court finds that the defendant has not met his heavy burden in opposing the plaintiffs' chosen forum.

## V. CONCLUSION

For the foregoing reasons, the court will deny the defendant's Motion to Dismiss. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge

13